[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10810

_____

D.C. Docket No. 6:16-cv-00662-PGB-KRS

LOYD P. CADWELL,
Individually and on behalf of All Others Similarly Situated,

Plaintiff - Appellant,

versus

KAUFMAN, ENGLETT & LYND, PLLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 30, 2018)

Before ED CARNES, Chief Judge, NEWSOM, and SILER,[*] Circuit Judges.

NEWSOM, Circuit Judge:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

This case arises under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which, among other things, amended federal law to impose new requirements and prohibitions on professionals who assist with the preparation of bankruptcy petitions.  The provision specifically at issue here, 11 U.S.C. § 526(a)(4), provides in relevant part that a "debt relief agency"—including a law firm that provides bankruptcy-related services—"shall not … advise" a debtor "to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."  In *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010), the Supreme Court unanimously concluded that Section 526(a)(4)'s first prohibition—on advice to incur additional debt "in contemplation of" a bankruptcy filing—requires proof that the advice was given for an invalid purpose designed to manipulate the bankruptcy process.  This case presents the question whether the statute's second prohibition—on advice to incur debt to pay for a lawyer's bankruptcy-related representation—likewise entails an invalid-purpose requirement.  We hold that it does not and that, as relevant here, an attorney violates Section 526(a)(4) if he instructs a client to pay his bankruptcy-related legal fees using a credit card.

2

**I**

Loyd Cadwell consulted with the law firm of Kaufman, Englett & Lynd ("KEL") about the possibility of filing a Chapter 7 bankruptcy petition.[1] Following the initial meeting, Cadwell entered into an agreement that obligated him to pay $1700 in attorneys' fees "for representation in [his] Chapter 7 Bankruptcy case." The agreement contained an addendum establishing a schedule that required immediate payment of a $250 retainer, a second $250 installment shortly thereafter, and then, after that, four monthly installments of $300 apiece. According to Cadwell's complaint, "KEL instructed [him] to pay the initial retainer and all subsequent payments by credit card." As directed, Cadwell paid the initial retainer and the next three installments using two different credit cards.

After terminating his relationship with KEL, Cadwell filed this action under 11 U.S.C. § 526(a)(4), which, as already explained, states that a law firm "shall not … advise" a client "to incur more debt in contemplation of such person filing a case under this title or to pay an attorney" for bankruptcy-related legal services. KEL moved to dismiss Cadwell's complaint, arguing (1) that he hadn't stated a claim on which relief could be granted and (2) that even if he had, Section 526(a)(4) is unconstitutional because it improperly restricts KEL's attorney-client

---

[1] Because Cadwell's appeal follows the district court's dismissal of his complaint for failure to state a claim, we accept as true the facts alleged in the complaint and draw all reasonable inferences in Cadwell's favor. *See, e.g.*, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

communications.  The district court granted KEL's motion.  "[W]ithout more," the court held, "the mere advice to use credit cards to pay for legal fees does not violate" Section 526(a)(4).  Rather, based on its reading of the Supreme Court's decision in *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010), the district court concluded that Section 526(a)(4) only "prohibits a debt relief agency from advising a debtor to incur additional debt for an invalid purpose."  Because Cadwell had "alleg[ed] no facts that would" support an inference "that KEL acted with an improper purpose or with an intent to manipulate the bankruptcy system," the district court held that he had failed to state a viable claim under the statute.  Having done so, the district court found it unnecessary to address KEL's First Amendment challenge.

On appeal, Cadwell contends that the district court erred in faulting him for failing to allege that KEL acted with an "invalid" (or "improper") purpose.  At least as it pertains to a lawyer's advice to his client to incur debt to pay legal fees, Cadwell insists, Section 526(a)(4)'s text admits of no such requirement.  KEL responds that the district court correctly interpreted the statute to impose an invalid-purpose element, but that even if Cadwell had stated a claim, the statute violates the First Amendment.  Our review is *de novo*.  *See Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1284 (11th Cir. 2015).

4

## II

As its name suggests, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was enacted "to correct perceived abuses of the bankruptcy system." *Milavetz*, 559 U.S. at 231–32.  The Act added to the Bankruptcy Code a number of provisions directed at the conduct of bankruptcy professionals.  *Id*. Among those provisions is 11 U.S.C. § 526(a), which "establishes several rules of professional conduct for persons qualifying as debt relief agencies," including lawyers.  *Id.* at 233.  At issue here is subsection (a)(4), which provides as follows:

> A debt relief agency shall not … advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4).

The parties here agree that KEL—as a law firm that provides bankruptcy-related advice—qualifies as a "debt relief agency" within the meaning of Section 526(a)(4).  *See* Br. of Appellant at 3, 7; Br. of Appellee at 5; *see also Milavetz*, 559 U.S. at 239.  The parties also agree that for purposes of this appeal, Cadwell is an "assisted person or prospective assisted person" under the statute.  *See* Br. of Appellant at 7; Br. of Appellee at 5.  Finally, and importantly, the parties agree that the statute contains two distinct prohibitions—one about incurring debt in anticipation of bankruptcy filings generally, and the other about incurring debt to

pay for bankruptcy-related legal services more specifically.  From there, the parties' positions diverge.

## A

The parties' central disagreement is over the proper way to parse Section 526(a)(4)'s two prohibitions.   For example, where does each prohibition begin and end, and more to the point, does the phrase "in contemplation of"—which the Supreme Court in *Milavetz* construed to require proof that the advice to incur debt was given for an invalid purpose—apply to both prohibitions, or only the first? Unfortunately, the statute contains no punctuation that might help us determine where to place the "hinge" that divides the two prohibitions—which, as it turns out, really matters.  We are presented here with three different ways of reading Section 526(a)(4)—one (sort of) suggested by the Supreme Court in *Milavetz*, another proposed by KEL and adopted by the district court, and yet another advocated by Cadwell.  Each locates the hinge in a different place in the text, resulting in three very different meanings.  We consider each in turn.

### 1

**Reading No. 1**:  "A debt relief agency shall not … advise an assisted person or prospective assisted person **[1]** to incur more debt in contemplation of such person filing a case under this title or **[2]** to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."

6

One way to parse the statute was suggested (obliquely) by the Supreme Court's opinion in *Milavetz*.  There, at the outset of the pertinent portion of its analysis, the Court observed that Section 526(a)(4) "prohibits a debt relief agency from 'advising an assisted person' *either* 'to incur more debt in contemplation of' filing for bankruptcy 'or to pay an attorney or bankruptcy petition preparer fee or charge for services' performed in preparation for filing."  559 U.S. at 239 (emphasis added and alterations omitted).  Under that reading, in which the hinge—the word "either" in the Court's paraphrase—comes before the words "to incur more debt," the statute would separately prohibit advice (1) "to incur more debt in contemplation of" filing for bankruptcy and (2) "to pay an attorney" for bankruptcy-related representation.

That's not an unnatural reading of the statute, at least as a grammatical matter.  Under it, both prohibitions would begin (neatly) with infinitives—"to incur" and "to pay."  But the interpretation does have a pretty big wart—namely, that it would flatly prohibit *all* advice "to pay an attorney" for bankruptcy-related representation.  That makes little sense, it seems to us, particularly in light of other provisions of the Bankruptcy Code that clearly contemplate that attorneys will get paid for bankruptcy-related services.  *See, e.g.*, 11 U.S.C. § 329 (requiring

7

attorneys to "file with the court a statement of the compensation paid or agreed to be paid" during the year preceding the petition).[2]

Perhaps not surprisingly, no one here has urged us to adopt this reading of Section 526(a)(4). And we don't think that we are bound by *Milavetz*'s passing suggestion that the statute's second prohibition might be understood to forbid advice "to pay an attorney," because the Court was concerned there only with the first prohibition. *See* 559 U.S. at 239 ("Only the first of these prohibitions is at issue."). We thus reject any interpretation of Section 526(a)(4) pursuant to which the statute's second prohibition erects a categorical bar on advice to pay bankruptcy attorneys.

**2**

**Reading No. 2**: "A debt relief agency shall not … advise an assisted person or prospective assisted person to incur more debt in contemplation of **[1]** such person filing a case under this title or **[2]** to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."

There is a second way to read Section 526(a)(4), proposed by KEL and adopted by the district court. In essence, KEL asserts that the statute prohibits a lawyer from advising his client to incur debt to pay for bankruptcy-related legal services *only* if that advice was given for an "invalid purpose." The district court

---

[2] *See also Lamie v. United States Trustee*, 540 U.S. 526, 537 (2004) ("It appears to be routine for debtors to pay reasonable fees for legal services before filing for bankruptcy ….").

agreed, reasoning that KEL's invalid-purpose interpretation was compelled by *Milavetz*.  We disagree.

The issue in *Milavetz* was whether the first prohibition in Section 526(a)(4)—precluding advice to incur more debt "in contemplation of" a bankruptcy filing—unconstitutionally restricted a law firm's attorney-client communications.  In service of its speech-based argument, the firm there contended that Section 526(a)(4)'s first prohibition broadly forbade "not only affirmative advice but also any discussion of the advantages, disadvantages, or legality of incurring more debt."  559 U.S. at 240.  The Supreme Court rejected the firm's expansive interpretation; instead, focusing on the phrase "in contemplation of," the Court concluded that the first prohibition more narrowly prevents an attorney "only from advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose."  *Id.* at 243.  In so holding, the Court explained that the phrase "in contemplation of" is a term of art historically associated with abusive conduct—basically, advice to "load up" on debt with the expectation of obtaining its discharge in bankruptcy.  *Id.* at 244. Thus, the Court held, the "controlling question" under Section 526(a)(4)'s first prohibition is "whether the impelling reason for advising an assisted person to incur more debt was the prospect of filing for bankruptcy."  *Id.* at 243 (quotation marks and alterations omitted).

We reject the view that *Milavetz*'s invalid-purpose gloss applies here. For starters, *Milavetz* certainly doesn't "directly control[]" this case, as KEL asserts. Br. of Appellee at 11. As already explained, *Milavetz* addressed only Section 526(a)(4)'s first prohibition; it said nothing about the second. 559 U.S. at 239 ("Only the first of these prohibitions is at issue."). Nor, we conclude, does *Milavetz*'s reasoning sensibly apply to the statute's second prohibition. Again, the *Milavetz* Court's conclusion that the statute's first clause prohibits only advice to incur additional debt for an invalid purpose rested on the phrase "in contemplation of." Thus, KEL's *Milavetz*-based argument—pursuant to which the invalid-purpose gloss applies to the second prohibition, as well as the first—would require that we place the hinge after the phrase "in contemplation of." On that construction, the statute would prohibit advice "to incur more debt in contemplation of [1] such person filing a case under this title or [2] to pay an attorney" for bankruptcy-related legal representation.

That interpretation founders for two reasons. Initially, and most obviously, it makes syntactical hash of Section 526(a)(4)'s second prohibition: A lawyer shall not advise his client "to incur more debt in contemplation of … to pay an attorney"? Nonsense. *See United States v. Hayes*, 555 U.S. 415, 422 (2009) (rejecting a particular reading of a statute because it was, among other things, "awkward as a matter of syntax"). Moreover, reading the phrase "in contemplation

10

of" to apply to both prohibitions renders the second prohibition essentially meaningless. Under KEL's interpretation, advice to incur additional debt would violate Section 526(a)(4) if *either* (1) the "impelling reason" for the advice is the expectation of bankruptcy discharge, *i.e.*, an invalid purpose, *see Milavetz*, 559 U.S. at 243, *or* (2) the impelling reason for the advice is exactly the same, and is thus invalid for the same reason, *and* the debt happens to be incurred to pay an attorney. Under that reading, the second prohibition becomes a mere subset of the first—it has no independent bite. We disfavor interpretations of statutes that render words or clauses superfluous. *See, e.g., Bloate v. United States*, 559 U.S. 196, 209 (2010). We therefore reject KEL's contention that the phrase "in contemplation of"—and thus, *Milavetz*'s invalid-purpose test—applies to Section 526(a)(4)'s second prohibition.

**3**

> **Reading No. 3**: "A debt relief agency shall not … advise an assisted person or prospective assisted person to incur more debt **[1]** in contemplation of such person filing a case under this title or **[2]** to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."

That leaves us with a third possible—and in our view, the correct— interpretation of Section 526(a)(4). Under this reading, the hinge comes after the phrase "to incur more debt," such that the statute prohibits advice "to incur more debt" either (1) "in contemplation of" a bankruptcy filing or (2) "to pay an

attorney" for bankruptcy-related legal services.  Unlike the first two interpretations, this one doesn't produce goofy results, defy the usual rules of syntax, or render a phrase meaningless.

Properly interpreted, then, Section 526(a)(4)'s second prohibition forbids lawyers from advising their clients "to incur more debt … to pay an attorney … a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."  11 U.S.C. § 526(a)(4).  Importantly, this second prohibition—unlike the first, which is modified by the "in contemplation of" phrase of art that drove the result in *Milavetz*—entails no invalid-purpose requirement.  And that, we think, makes perfect sense, because the two prohibitions address different subjects.  The first is framed in general terms—it forbids advice "to incur more debt in contemplation of" a bankruptcy filing.  That prohibition, read for all it might be worth, could cover both abusive advice (*e.g.*, advice to "load up" on debt just to get it discharged) and salutary advice that would likely inure to the benefit of both debtor and creditor (say, to refinance a mortgage to a better interest rate).  As the Supreme Court recognized in *Milavetz*, the "in contemplation of" clause acts as a divining rod of sorts to separate the abusive advice from the salutary.  559 U.S. at 239–43, 248 n.6.

The second prohibition, by contrast, is aimed at one specific kind of misconduct—in essence, a bankruptcy lawyer saying to his client, "You should

12

take on additional debt to pay me!" That sort of advice is inherently abusive in at least two respects. First, it puts the attorney's financial interest—getting paid in full—ahead of the debtor-client's. If a creditor discovers the timing and reason for the fee-related debt, it could challenge the debt's dischargeability, thereby compromising the debtor's fresh start. *See Milavetz*, 559 U.S. at 245. Second, it puts the lawyer's own interests ahead of the creditors' in that, while ensuring the lawyer's full payment, it leaves a diminished estate on which creditors can draw. *See id.* Section 526(a)(4)'s second prohibition, then, has no need for any further invalid-purpose gloss, because the advice it targets is, in effect, suspect *per se*.

\* \* \*

We therefore hold that the district court erred in concluding that Cadwell was required to allege that KEL's advice was given for some additional, invalid purpose. Rather, the statute required only that he allege that he was "advise[d] … to incur more debt … to pay an attorney" for bankruptcy-related legal services.

**B**

Having determined Section 526(a)(4)'s proper interpretation, we now turn to the question whether Cadwell's allegations state a claim under the statute's second prohibition. It seems clear to us that they do.

13

Cadwell alleged in his complaint that "KEL instructed [him] to pay the initial retainer and all subsequent payments by credit card."  Good enough.  First, Cadwell's assertion that KEL "instructed" him to make the payment satisfies the statute's "advise" requirement.  *See Milavetz*, 559 U.S. at 246 (explaining that Section 526(a)(4)'s limit on "advis[ing]" a person to incur more debt "requires professionals … to avoid *instructing or encouraging* assisted persons to take on more debt in that circumstance") (emphasis added).  Second, Cadwell alleged that he was instructed to make a payment by credit card, an action that necessarily required him to "incur more debt."  *See, e.g.*, Webster's Second New International Dictionary 1261 (1959) (defining "incur" to mean "[t]o meet or fall in with, as something inconvenient or harmful; to become liable or subject to; to bring down upon oneself; as to *incur* debt ….").  Finally, there is no dispute for purposes of this appeal that the credit card charges were for KEL's representation of Cadwell in a bankruptcy-related legal proceeding.[3]

We therefore have no trouble concluding (as even KEL's attorney ultimately conceded at oral argument[4]) that Cadwell's allegations state a claim under the

---

[3] Because a violation of Section 526(a)(4) is complete when a lawyer gives the advice to incur a debt to pay for bankruptcy-related representation, it doesn't matter that Cadwell might have completed a "Payment Authorization" form indicating that he intended to pay (at least in part) by debit card.  In any event, ambiguities in the complaint are construed in Cadwell's favor, *see, e.g., Hill*, 321 F.3d at 1335, and exhibits attached to the complaint demonstrate that Cadwell did in fact make four of his payments via credit card.

[4] *See* Tr. of Oral Argument at 15:45 (Q: "Do you agree that if the statute is properly read to say that the debt relief agency shall not advise an assisted person to incur more debt to pay his

14

statute as we have interpreted it.[5]

## III

KEL finally contends that even if Cadwell has stated a claim under Section 526(a)(4), that provision is unconstitutional because it improperly restricts KEL's attorney-client communications.  KEL's primary argument in that connection is that "[p]rohibiting advice to clients to pay a fee" violates the First Amendment. Br. of Appellee at 24.  But as already explained, Cadwell hasn't asserted—and we don't hold—that the statute flatly prevents a lawyer from advising a client to pay legal fees.  We therefore reject any First Amendment argument based on that overbroad reading of the statute.

KEL separately—and more narrowly—contends that "a statutory prohibition on KEL from providing sound legal advice as to how a client may obtain representation from an attorney, pay costs, and navigate the complex world of bankruptcy law is unconstitutional."  Br. of Appellee at 24.  The Supreme Court considered and dismissed a similar argument in *Milavetz*.  Specifically, the Court

---

lawyer, [then] the allegation in paragraph 10 is sufficient under *Twombly* and *Iqbal*?"  * * * A: "Yes, it is ….").

[5] Cadwell's complaint also purports to assert a claim on behalf of a class.  As to the class, Cadwell alleged that "KEL collected Chapter 7 retainer fees from the prospective debtor(s) through the charging of a credit/charge card which served to cause the prospective debtor(s) to incur more debt prior to the potential filing of the Chapter 7."  The district court didn't address whether the class allegations stated a claim under the statute, and the parties haven't addressed those allegations on appeal.  We therefore won't address them either.

"reject[ed] … [the] suggestion that § 526(a)(4) broadly prohibits debt relief agencies from *discussing* covered subjects instead of merely proscribing affirmative advice to undertake a particular action." 559 U.S. at 246 (emphasis added and alterations omitted). Rather, the Court explained, the statute "by its terms prevents debt relief agencies only from 'advising' assisted persons 'to incur' more debt," meaning that attorneys "remain free to talk fully and candidly *about* the incurrence of debt in contemplation of filing a bankruptcy case." *Id.* Just so here. Section 526(a)(4) doesn't prevent firms like KEL from discussing with debtors potential options and their legal consequences. It merely prohibits them from giving their clients "affirmative advice" to incur more debt in order to pay for bankruptcy-related representation.[6]

## IV

We therefore hold (1) that a debt-relief agency (including a law firm) violates 11 U.S.C. § 526(a)(4) if it advises a client to incur additional debt to pay for bankruptcy-related legal representation, without respect to whether the advice was given for some independently "invalid purpose"; (2) that Cadwell's allegation

---

[6] Because KEL didn't offer in its brief any other arguments as to why Section 526(a)(4)—as properly interpreted—might violate the First Amendment, we needn't further consider whether the statute, as correctly interpreted, withstands First Amendment scrutiny. *Cf. Milavetz*, 559 U.S. at 248 ("Because our reading of the statute supplies a sufficient ground for reversing the Court of Appeals' decision, and because [the firm] challenges the constitutionality of the statute, as narrowed, only on vagueness grounds, we need not further consider whether the statute so construed withstands First Amendment scrutiny.").

that KEL instructed him to pay his bankruptcy-related legal bills by credit card

states a viable claim under Section 526(a)(4); and (3) that none of the

constitutional arguments that KEL has presented to us warrants invalidating the

statute on First Amendment grounds.

**REVERSED AND REMANDED.**