[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10526
_____

D.C. Docket No. 3:17-cv-00022-DHB-BKE


LIZZIE DAVIS,
individually and on behalf of all others similarly situated,
DENNIS GREEN,
individually and on behalf of all others similarly situated,
JOHNNY MOODY,
individually and on behalf of all others similarly situated,
JOHN SUBER,
individually and on behalf of all others similarly situated,
SHIRLEY WILLIAMS,
individually and on behalf of all others similarly situated,
PAMELA DAVIS,
individually and on behalf of all others similarly situated,

Plaintiffs-Appellees,

versus

OASIS LEGAL FINANCE OPERATING COMPANY, LLC,
OASIS LEGAL FINANCE, LLC,
OASIS LEGAL FINANCE HOLDING COMPANY, LLC,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Southern District of Georgia

———————————————

(August 28, 2019)

Before TJOFLAT and JORDAN, Circuit Judges, and SCHLESINGER, District Judge.*

JORDAN, Circuit Judge:

American courts have long refused to enforce contractual provisions that contravene public policy. *See, e.g.*, *Marshall v. Baltimore and Ohio R.R.*, 57 U.S. 314, 334 (1853) ("It is an undoubted principle of the common law that it will not lend its aid to enforce a contract to do an act that is illegal, or which is inconsistent with sound morals or public policy. . . ."). In Georgia, "[n]o principle of jurisprudence is better settled than this." *Glass v. Childs*, 71 S.E. 920, 921 (Ga. Ct. App. 1911).[1]

Courts have said that "[i]t is the duty of all courts of justice to keep their eye steadily up on the interests of the public, . . . and when they find an action is founded

———————————————

* The Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1] For an interesting early Georgia case holding a contract void as against public policy, see *Chancely v. Bailey*, 37 Ga. 532, 533, 541–42 (Ga. 1868) (holding that a contract purporting to pay Mr. Chancely $2,500 if he served in Mr. Bailey's place in the Army of the Confederate States during the Civil War was void because Georgia did not have the right to forcibly secede from the Union and Mr. Chancely could not contract to illegally engage in war against the United States).

2

up on a claim injurious to the public . . . to give no countenance or assistance *in foro civili.*" Elisha Greenhood, The Doctrine of Public Policy: Reduced to Rules 2 (1886) (quoting C.J. Wilmot's Opinion in *Low v. Peers*, (1770) 97 Eng. Rep. 138 (Ex. Ch.)). Others, however, have characterized the public policy defense as "a very unruly horse, and when once you get astride it you never know where it will carry you." *Richardson v. Mellish*, (1824) 130 Eng. Rep. 294, 303 (H.L.) (Burrough, J.).

In this case, a class of borrowers filed suit in Georgia against their lenders, alleging that their loan agreements violated state usury laws. The lenders moved to dismiss the action based on the forum selection clause and class action waiver in the agreements. The district court concluded that both provisions were unenforceable as against Georgia public policy, and the lenders appealed.

Following oral argument and a review of the relevant authorities, we agree with the district court. Georgia's Payday Lending Act and Industrial Loan Act articulate a clear public policy against enforcing forum selection clauses in payday loan agreements and in favor of preserving class actions as a remedy for those aggrieved by predatory lenders. If Georgia's public policy regarding payday lenders is a horse, as Justice Burrough suggested, it carries these borrowers safely to a Georgia courthouse.

# I

The plaintiffs entered into identical loan agreements with Oasis Legal Finance, LLC; Oasis Legal Finance Operating Company, LLC; and Oasis Legal Finance Holding Company, LLC ( the "Oasis lenders"). The loans generally amounted to less than $3,000 and were to be repaid from any recoveries that the plaintiffs received in their separate personal injury lawsuits. The plaintiffs' obligations to repay the loans were therefore contingent on success in the underlying lawsuits.

In February of 2017, the plaintiffs filed a class action complaint against the Oasis lenders in Georgia state court, alleging that the loan agreements violated Georgia's Payday Lending Act, O.C.G.A. § 16-17-1 *et seq.*, Industrial Loan Act, O.C.G.A. § 7-3-1 *et seq.*, and usury laws, O.C.G.A. § 7-4-18. The Oasis lenders removed the suit to federal court and moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike the plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f). The Oasis lenders argued, among other things, that the loan agreements' forum selection clause required the plaintiffs to bring suit in Illinois, and that the class action waiver barred their ability to file a class

action.  The plaintiffs responded that these provisions violated Georgia public policy and, therefore, were unenforceable.[2]

Applying Georgia law, the district court rejected both of the arguments made by the Oasis lenders and held that the forum section clause and class action waiver were unenforceable.  *See Davis v. Oasis Legal Fin. Operating Co.*, No. CV 317-022, 2017 WL 5490919, at *4–5 (S.D. Ga. Nov. 15, 2017)  The district court concluded that "the enforcement of forum selections clauses in payday lending contracts would contravene [Georgia's] public policy" as established by the Payday Lending Act.  *Id.* at *4.  It explained that "[c]ertain payday lenders have attempted to use forum selection clauses contained in payday loan documents in order to avoid the courts of the State of Georgia, and the General Assembly has determined that such practices are unconscionable and should be prohibited." *Id.* at *3 (quoting § 16-17-1(d)).  The district court similarly ruled that the class action waiver contravened public policy because, when the Georgia Legislature enacted the PLA and the GILA, it expressly included class actions as a remedy for those aggrieved by payday lenders.  The district court reasoned that the Georgia Legislature would not create such a remedy

---

[2]  The loan agreements' forum selection clause states: "THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES . . . ."  D.E. 10-8 at 25 ¶6.5 (capitalization in original).  The loan agreements' class action waiver states: "THE PARTIES HEREBY . . . WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT . . . ."  D.E. 10-8 at 25 ¶6.6 (capitalization in original).

and then allow lenders to "effectively wipe away this consumer protection with a waiver in a single paragraph of a six-page, single-spaced agreement." *Id.* at \*5.

The district court certified its decision for interlocutory review, and the Oasis lenders petitioned us to consider whether the district court erred in concluding that the loan agreements' forum selection clause and class action waiver are unenforceable.  We agreed to consider both issues, and now affirm.[3]

## II

The enforceability of a forum selection clause is a question of law that we review de novo.  *See Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1235 (11th Cir. 2011).  The same plenary standard governs the enforceability of a class action waiver.  *See Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011).

## A

A forum selection clause, when properly bargained for, "protects [the parties'] legitimate expectations and furthers the vital interest of the justice system." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)

---

[3] We recognize that in *Ruth v. Cherokee Funding, LLC*, 820 S.E.2d 704, 710 (Ga. 2018), the Georgia Supreme Court held that loans in which the borrowers' obligations to repay are contingent upon success in an underlying personal-injury lawsuit are not "loans" under the Georgia Payday Lending Act and the Industrial Loan Act.  The Oasis lenders, however, concede that they did not argue in the district court that the loans at issue here are not loans under the PLA and GILA.  **[*See* O.A. Recording at 5:16]**  That argument, therefore, is not properly before us.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

(quotation marks omitted).  Such clauses "should be given controlling weight in all but the most exceptional cases."  *Id*.  *See also M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972) (stating that a forum selection clause "should control absent a strong showing that it should be set aside").

In *Bremen*, 407 U.S. at 15–18, the Supreme Court identified four grounds on which a court can refuse to enforce an otherwise-valid forum selection clause.  These include if "(1) [its] formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the [forum selection clause] would contravene a strong public policy."  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998) (citing *Bremen*, 407 U.S. at 15–18).  Here, we consider the fourth ground—when enforcing the forum selection clause "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."  *Bremen*, 407 U.S. at 15.

"Public policy is an amorphous concept . . . .  Accordingly, it has been held that, the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt."  *Dep't of Transp. v. Brooks*, 328 S.E.2d 705, 713 (Ga. 1985) (alterations adopted and quotations omitted).  In Georgia, a contractual

7

provision generally does not violate public policy unless the Legislature has declared it so or enforcement of the provision would flout the very purpose of the law. *See id.*; *Robinson v. Reynolds*, 21 S.E.2d 214, 215 (Ga. 1942) ("Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit . . . [and are] void as against public policy.").

Although amorphous in concept, Georgia's public policy bar is built on a solid foundation—the Georgia Constitution and state statutes. "[T]hese are the sources that are first to be considered and that often may be conclusive." *Strickland v. Gulf Life Ins. Co.,* 242 S.E.2d 148, 151 (Ga. 1978) (quotation omitted). "Statutes, of course, are perhaps the clearest expressions of the public policy of [Georgia]." *Dove v. Dove*, 680 S.E.2d 839, 842 (Ga. 2009). *See also* Sonja Laesen, 7 Georgia Jurisprudence § 3:3 (updated 2019) ("The only authentic and admissible evidence of public policy of a state is its constitution, laws, and judicial decisions."). For example, O.C.G.A. § 13-8-2 provides that "[a] contract which is against the policy of the law cannot be enforced," and lists particular agreements that are unenforceable as against public policy. Although § 13-8-2 does not address the specific provisions at issue in this case, the statute makes clear that its list is "nonexclusive" and Georgia courts have held that they "are not restricted by this list in voiding contracts that are against public policy." *Edwards v. Grapefields, Inc.*, 599 S.E.2d 489, 493 (Ga. Ct.

8

App. 2004). We may therefore look to other Georgia statutes to determine whether the state has a strong public policy against enforcing forum selection clauses in favor of out-of-state payday lenders.

The Georgia Payday Lending Act, O.C.G.A. § 16-17-1 *et seq.*, states in relevant part as follows:

> A payday lender shall not . . . nor shall the loan contract designate a court for the resolution of disputes concerning the contract other than a court of competent jurisdiction in and for the county in which the borrower resides or the loan office is located.

§ 16-17-2(c)(1). The Georgia Legislature explained the PLA's prohibition on out-of-state forum selection clauses in this way:

> Certain payday lenders have attempted to use forum selection clauses contained in payday loan documents in order to avoid the courts of the State of Georgia, and *the General Assembly has determined that such practices are unconscionable and should be prohibited.*

§ 16-17-1(d) (emphasis added).

Based on this language, the Georgia Supreme Court ruled that the PLA established a clear public policy against "payday lenders [that] have attempted to skirt the laws of Georgia by use of forum selection clauses." *W. Sky Fin., LLC v. Georgia*, 793 S.E.2d 357, 363 (Ga. 2016). In ruling that the loan agreements' forum selection clause is unenforceable in this case, the district court found that § 16-17-1(d) and § 16-17-2(c)(1) were "conclusive" as to Georgia's public policy. *See*

*Strickland,* 242 S.E.2d at 151.  On appeal, the Oasis lenders argue that two other subsections of the PLA support the opposite conclusion.[4]

First, the Oasis lenders assert that the word "county" in § 16-17-2(c)(1) is unqualified, meaning that by permitting parties to select a forum "in and for the county in which . . . the loan office is located" the PLA allows parties to select a county outside Georgia for litigation if it is the county where the lenders' loan office is located.  The parties could therefore select as a forum the county where the Oasis lenders operate their loan office—Cook County, Illinois.  This argument has some superficial appeal, but the district court rejected it, concluding that the word "county" in § 16-17-2(c)(1) refers only to Georgia counties because that subsection is a venue provision through which the Legislature intended to allow parties to select fora within Georgia while prohibiting outbound forum-selection clauses.  The Oasis lenders contend that the district court erred by reading in the word "Georgia" in front of "county" in § 16-17-2(c)(1).  We think the district court got it right.

Georgia venue provisions commonly use the term "county" or "counties" in refence to Georgia counties, without explicitly saying so.  *See* Ga. Const., Art. VI, § 2, ¶¶ III, IV, VI; O.C.G.A. § 9-10-93.  For example, Georgia's Constitution provides

---

[4] The Oasis lenders also claim (in a footnote of their reply brief) that interpreting the PLA to require out-of-state lenders to defend these kinds of lawsuits in Georgia may violate the dormant Commerce Clause.  The Oasis lenders, however, did not present this argument in the district court or in their initial brief, and they also failed to support the argument with legal authorities.  We therefore do not address it.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).

10

that "joint trespassers residing in different counties may be tried in either county,"
Ga. Const., Art. VI, § 2, ¶ IV, and Georgia courts have interpreted that provision to
allow "joint tortfeasor residents of different *Georgia* counties [to] be sued in either
county." *Robinson v. Star Gas of Hawkinsville, Inc.*, 533 S.E.2d 97, 98 (Ga. Ct. App.
2000) (emphasis added).  *See also Cartwright v. Fuji Photo Film U.S.A., Inc.*, 720
S.E.2d 200, 204 n.4, 206 (Ga. Ct. App. 2011) ("[T]he proper venue for a suit is in
which Georgia county the defendant resides[.]"); *Cunningham v. Estate of
Cunningham*, 697 S.E.2d 280, 282 (Ga. Ct. App. 2010) ("Georgia's constitutional
venue provision . . . has no application to a suit against a nonresident  . . . because in
such case there is no Georgia county in which the nonresident resides.").  The same
interpretation applies to Georgia statutes with similar language.  *See Lloyd Adams,
Inc. v. Liberty Mut. Ins. Co.*, 10 S.E.2d 46, 48 (Ga. 1940) (holding that a similar
venue provision in Georgia's Nonresident Motorist Act, now O.C.G.A. § 40-12-3,
afforded venue in "any county in the State").  This makes sense given that the
Georgia Legislature generally has authority to establish venue rules within Georgia.

Given the PLA's condemnation of out-of-state lenders using forum selection
clauses to avoid Georgia courts in § 16-17-1(d), it would make little sense to
conclude that the Georgia Legislature intended the word "county" in the next
subsection to include places like Cook County, Illinois.  *See West v. City of Albany*,
797 S.E.2d 809, 811 (2017) ("We do not limit our consideration to the words of one

subsection of a statute alone, but consider a particular provision in the context of the statute as a whole . . . .").  The Oasis lenders' argument—that by using the term "county" instead of "Georgia county" in § 16-17-2(c)(1), the Legislature opened a back door for out-of-state forum selection clauses—would effectively "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).  Moreover, it would also render the PLA's prohibition of certain forum selection clauses in § 16-17-1(d) "meaningless, redundant, or mere surplusage." *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991).  We disfavor such interpretations.  *See Cadwell v. Kaufman, Englett & Lynd, PPLC*, 886 F.3d 1153, 1159 (11th Cir. 2018).

Next, the Oasis lenders contend that the PLA does not apply to loan agreements between a Georgia borrower and an out-of-state lender because § 16-17-1(d) states that "[p]ayday lending involves relatively small loans and does not encompass loans that involve interstate commerce."  We disagree for a few reasons.  First, the Oasis lenders' arguments are mutually exclusive.  Arguing that the PLA does not apply to loans by an out-of-state lender contradicts the lenders' argument that the Georgia Legislature meant for the term "county" in § 16-17-2(c)(1) to include the county where an out-of-state lender maintains its home office.  *See Footstar, Inc. v. Liberty Mut. Ins. Co.*, 637 S.E.2d 692, 695 (2006) ("[C]ourts should construe a statute to give sensible and intelligent effect to all of its provisions . . .").

12

Second, other provisions of the PLA make clear that the Act governs "any business" that "consists in whole or in part of making . . . loans of $3,000.00 or less" unless those entities are specifically exempted. *See W. Sky Fin.*, 793 S.E.2d at 363 (quoting § 16-17-2(a)). Out-of-state lenders are not exempt. *See* § 16-17-2(a)(1)–(4). Third, excluding loans involving out-of-state lenders from coverage—as the Oasis lenders argue—would render the PLA's prohibition of out-of-state forum selection clauses meaningless. *See Cadwell*, 886 F.3d at 1159; *Canals-Jimenez*, 943 F.2d at 1287.

In *Western Sky*, 793 S.E.2d at 363, the defendant argued that the PLA's "interstate commerce" language rendered the statute inapplicable to loans involving out-of-state lenders. The Georgia Supreme Court "reject[ed] the notion that this phrase was meant to exclude loans that involve interstate commerce from the scope of the [PLA]." *Id.* "If that were so, the [PLA] would be virtually meaningless because it would prohibit nothing." *Id. See also id.* at 364 ("If, as Defendants argue, the [PLA] is limited only to transactions that do not involve interstate commerce, the [PLA] would effectively prohibit nothing at all."). The Georgia Supreme Court went on to articulate how excluding loans involving an out-of-state lender would undermine the entire purpose of the PLA.

> Given the clear and unambiguous scope of the [PLA] as a whole, to interpret that phrase as a definitional limitation upon payday lending and thereby exempt loans that involve interstate commerce from the prohibitions of the [PLA] *would create such a contradiction and absurdity as*

13

> *to demonstrate that the legislature did not mean it to create such a limitation.*

*Id.* at 365 (emphasis added).

Based on our review, Georgia statutes establish a clear public policy against out-of-state lenders using forum selection clauses to avoid litigation in Georgia courts. *See* O.C.G.A. §§ 16-17-1(d), 2(c)(1). Enforcing a forum selection clause like the ones here "would [therefore] contravene a strong public policy of the forum in which suit is brought," and the district court correctly denied the Oasis lenders' motion to dismiss on that ground. *See Bremen*, 407 U.S. at 15.[5]

**B**

The plaintiffs argue, and the district court concluded, that the class action waivers contained in the loan agreements also contravene the purpose of the PLA and the Georgia Industrial Loan Act, O.C.G.A. § 7-3-29. We start with the text of both acts. *See Dove*, 680 S.E.2d at 842.

The PLA contains a provision stating that "a civil action may be brought on behalf of an individual borrower or on behalf of an ascertainable class of borrowers."

---

[5] Because we conclude that Georgia statutes establish a public policy against the forum selection clause at issue, we are not bound by our opinion in *Rucker*, 632 F.3d at 1238. In that case, we held that an identical forum selection clause was valid and enforceable under Alabama law. *See id.* Our decision to invalidate the forum selection clause in this case depends entirely on Georgia law.

§ 16-7-3.  The GILA provides that "a claim for violation of this chapter against an unlicensed lender may be asserted in a class action." § 7-3-29(e).[6]

The district court concluded that, in passing these laws, the Georgia Legislature "expressly contemplated a specific remedy—[a] class action—for persons aggrieved by predatory lending . . . [and] did not expressly create the class action remedy so that predatory lenders could effectively wipe away this consumer protection with a waiver . . . ."  *Davis*, 2017 WL 5490919, at \*5.  On appeal, the Oasis lenders contend that the district court erred by not considering whether the provision was procedurally or substantively unconscionable.  They also argue that neither the PLA nor the GILA prohibit class action waivers or create a statutory right to pursue a class action.

These arguments miss the point.  The district court's ruling flowed from its conclusion that enforcing class action waivers in this context would allow payday lenders to eliminate a remedy that was expressly contemplated by the Georgia Legislature, and thereby undermine the purpose of the statutory scheme.  That conclusion, if correct, renders the class action waiver unenforceable under Georgia law regardless of whether the provision is also procedurally or substantively unconscionable.  *See Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*,

---

[6] We note that this subsection of the GILA applies to "*unlicensed* lenders," but the district court quoted this provision in ruling that the class action waiver is unenforceable, and the Oasis lenders do not argue that it does not apply.  *See Davis*, 2017 WL 5490919, at \*5.

15

696 S.E.2d 663, 667 (Ga. 2010) (refusing to "enforce a contractual provision which contravenes the statutory law of this state"); *Terry v. St. Farm Fire & Cas. Ins. Co.*, 504 S.E.2d 194, 195 (Ga. 1998) (considering whether "[t]he underlying purpose" of the statute would be "contravened by enforcement of the specific terms of the agreement"). *Accord Atl. Flooring Design Ctrs., Inc. v. R.G. Williams Const., Inc.*, 773 S.E.2d 868, 870 (Ga. Ct. App. 2015) (voiding a contractual provision because it would frustrate the public policy expressed in the Georgia Arbitration Code); *Langford v. Royal Indem. Co.*, 430 S.E.2d 98, 102 (Ga. Ct. App. 1993) ("A contract provision normally should not be enforced where it conflicts with the general policy and spirit of the statute which governs it, although there may be no literal conflict; that is, it makes no difference whether the statutory prohibition or command is expressed or implied.").

The Oasis lenders may be correct in arguing that, when Georgia courts address whether a contractual provision is substantively unconscionable, they also "consider 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir. 2005) (quoting *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996)). The public policy bar, however, remains an *independent* basis to hold a contractual provision unenforceable. *See Glosser v. Powers*, 71 S.E.2d 230, 231 (Ga. 1952)

16

("Even in the absence of fraud in the procurement of a contract, a contract which is against the policy of the law is void and unenforceable.")  A hornbook example of the public policy defense is that a court will not enforce a contractual provision that is illegal regardless of whether its obligations are mutual, its terms are conspicuous, and the parties are well represented.  *See* 17A Am. Jur. 2d Contracts § 247 (updated 2019).  *See also Stoudemire v. HSBC Bank USA, N.A.*, 776 S.E.2d 483, 484 (Ga. Ct. App. 2015) (highlighting the difference between "[c]ontracts to do illegal or immoral things, contracts against public policy, and gambling contracts," which are legally void, and "fraudulent contracts and contracts entered under duress," which are voidable by the injured party) (citations omitted).

The district court did not, and needed not, conclude that the PLA or the GILA expressly prohibited class action waivers or created a statutory right to pursue a class action.  A contractual provision need not "literal[ly] conflict" with Georgia law to contravene public policy.  *See Langford*, 430 S.E.2d at 102; *Robinson*, 21 S.E.2d at 215.  Instead, the district court concluded that enforcement of the class action waivers in this context would eliminate a remedy contemplated by the Georgia Legislature and undermine the purpose of the PLA and the GILA.  *Davis*, 2017 WL 5490919, at *5.

To that point, the Oasis lenders make one additional argument warranting further discussion—that the PLA's fee-shifting provision eliminates the risk that

17

enforcing the class action waiver would effectively prevent the plaintiffs from litigating their claims. In past cases, we have held that certain class action waivers were not unconscionable, in part because the agreements at issue contained a fee-shifting provision that, in practice, permitted the plaintiffs to pursue their claims individually. *See Jenkins*, 400 F.3d at 877–80; *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 816–18 (11th Cir. 2001). Those cases, however, concerned whether the class action waivers were unconscionable because enforcement would prevent the plaintiffs from having their day in court. *See Jenkins*, 400 F.3d at 877–78. As discussed above, the district court here did not conclude that the class action waiver was procedurally or substantively unconscionable—or that the plaintiffs in this case could never litigate their claims individually—but relied on Georgia's public policy as expressed in the text and purpose of the PLA and the GILA.

The Oasis lenders point out that in *Jenkins*, 400 F.3d at 877–80, and *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000), we held that class action waivers in arbitration clauses were not void as against public policy. But those cases do not call for a different result here. Neither *Jenkins* nor *Bowen* analyzed the PLA, the GILA, or Georgia's public policy against class action waivers in payday loan agreements. Instead, those cases concerned class action waivers *in arbitration agreements*—where the Federal Arbitration Act "create[s] a strong federal policy in favor of arbitration." *Picard v. Credit Solutions, Inc.*, 564 F.3d

1249, 1253 (11th Cir. 2009). The Supreme Court, in multiple cases, has ruled that § 2 of the FAA overrides a state statute or common-law doctrine that attempts to undercut the enforceability of an arbitration agreement. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425, 1426 (2017); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468, 471 (2015). The class action waiver here is not contained in an arbitration agreement, so § 2 of the FAA does not stand in the way of enforcing Georgia's public policy.

The PLA and the GILA establish the Georgia Legislature's intent to preserve class actions as a remedy for those aggrieved by payday lenders. Enforcing the class action waiver here would undermine the purpose and spirit of Georgia's statutory scheme. The class action waiver is therefore unenforceable, and the district court did not err in denying the Oasis lenders' motion to strike the plaintiffs' class allegations.

## III

We affirm the district court's denial of the motion to dismiss and motion to strike.

**AFFIRMED.**

19