SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**William Pace v. Hamilton Cove (A-4-23) (088302)**

**Argued January 16, 2024 -- Decided July 10, 2024**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers (1) whether the specific class action waiver in the lease agreements between plaintiffs William Pace and Robert Walters and defendants (collectively, Hamilton Cove Apartments) is enforceable and (2) whether class action waivers in consumer contracts that do not contain mandatory arbitration provisions are contrary to public policy and therefore unenforceable.

The Hamilton Cove apartment complex, located in Weehawken, houses hundreds of apartments along the Hudson River waterfront. Plaintiffs allege that in April 2020, Hamilton Cove advertised on its website and social media pages that its apartments had "elevated, 24/7 security." Plaintiffs each leased apartments at Hamilton Cove. Both plaintiffs' leases allowed three days to consult with an attorney, after which the leases would become final. The leases were both standard form contracts with multiple addenda, including a "Class Action Waiver" Addendum. The lease addenda were incorporated into and made part of the lease.

After moving into their apartments, Pace and Walters discovered that the complex's security cameras did not work and that there was no 24/7 security. According to plaintiffs, the advertised "24/7 security" drew them to lease defendants' apartments and pay the leasehold price, especially because, plaintiffs allege, Weehawken has a property crime rate higher than the state average.

In March 2022, Pace and Walters jointly filed a complaint, alleging common law fraud and a violation of the Consumer Fraud Act (CFA). Defendants moved to dismiss plaintiffs' claims for failure to state a claim or, alternatively, to strike plaintiffs' class allegations, arguing that plaintiffs waived their ability to proceed as a class when they signed the class action waiver addendum. The trial court denied defendants' motions, finding plaintiffs' complaint sufficiently pled fraud.

The Appellate Division affirmed the trial court's decision and held that "a class action waiver in a contract that does not contain a mandatory arbitration provision" is unenforceable as a matter of law and public policy. 475 N.J. Super.

1

568, 579-80 (App. Div. 2023). The court distinguished <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333 (2011), in which the United States Supreme Court held that "the Federal Arbitration Act [(FAA)] . . . preempts states from invalidating class action waiver clauses contained within arbitration agreements on public policy or unconscionability grounds" because no arbitration agreement was present in the lease agreements at issue. <u>Id.</u> at 576-77. The Appellate Division then determined that unless they are not rendered enforceable by the presence of an arbitration agreement, "[c]lass action waivers are clearly contrary to the public policy of this State." <u>Id.</u> at 578-79. The Court granted leave to appeal. 255 N.J. 342 (2023).

**HELD:** Class action waivers in consumer contracts are not per se contrary to public policy, but they <u>may</u> be unenforceable if found to be unconscionable or to violate other tenets of state contract law. In this case, because plaintiffs clearly and unambiguously waived their right to maintain a class action and the lease contract is not unconscionable as a matter of law, it is enforceable.

1. A class action is the procedural mechanism by which an otherwise vulnerable class of diverse individuals with small claims is given access to the courthouse. Class actions also further other policy goals, such as judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants. The requirements for class certification are liberally construed. (pp. 16-18)

2. Simply because courts have considered and upheld class waivers accompanied by arbitration agreements in light of the arbitration-protective policies adopted in the FAA and state arbitration acts does not mean that an arbitration provision is necessary to a class waiver's enforceability. Although <u>Concepcion</u> turns on the FAA's preemption of a state rule that would "condition[] the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures," <u>see</u> 563 U.S. at 336, 352, the decision nowhere suggests that class waivers cannot be enforced outside the arbitration context. Nor does the fact that class actions advance several important policy goals mean that they cannot be waived. Our law supports the contractual waiver of many rights that advance important goals, and case law underscores New Jersey's strong public policy in favor of the freedom to contract except where a contract would violate public policy. Legislatures can override the freedom to contract in specific settings. But the fact that certain legislation may expressly confer a right to file a class action, thereby forestalling attempts to contract around class actions, strongly supports the premise that class action waivers can be enforceable and not the proposition that they are always unenforceable outside the arbitration context. And here, there is neither a controlling statutory provision that expressly permits class actions nor a clear statement of public policy disfavoring class action waivers. (pp. 19-23)

3.  Guided by those legal principles, the Court holds that class action waivers standing alone and apart from a mandatory arbitration provision are not per se unenforceable.  Instead, a particular class action waiver in a given contract may be unenforceable if found to be unconscionable or invalid under general contract principles.  As a matter of general contract law, the inquiry is the same regardless of whether a contract contains an arbitration provision.  (p. 24)

4.  When a party asserts unconscionability as a defense to a contract claim, courts conduct a fact-sensitive analysis and assess both procedural and substantive unconscionability.  A contract of adhesion -- a contract presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars -- necessarily involves some measure of procedural unconscionability.  When determining whether to enforce a contract of adhesion as a matter of policy, New Jersey courts consider the following factors:  (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the adhering party, and (4) the public interests affected by the contract.  Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 356 (1992).  Those factors, known as the Rudbart factors, focus on the procedural and substantive aspects of a contract of adhesion to determine whether the contract is so oppressive or inconsistent with public policy that it would be unconscionable to permit its enforcement.  The Court reviews cases applying the Rudbart factors.  (pp. 24-30)

5.  In this case, plaintiffs knowingly and voluntarily waived their right to maintain a class action.  The agreement here was written in a simple, clear, understandable and easily readable way as required by the CFA, and it clearly and unambiguously put plaintiffs on notice that they could only proceed with a lawsuit against defendants on an individual basis.  Although the lease agreement plaintiffs signed arguably is a contract of adhesion, that marks "the beginning, not the end of the inquiry" regarding its enforceability.  Rudbart, 127 N.J. at 354.  Applying the Rudbart factors, the Court notes that (1) the subject matter of the agreement is a consumer contract for housing subject to the CFA; (2) the parties' relative bargaining power does not particularly favor plaintiffs or defendants; (3) the record here contains no indicia of economic compulsion; and (4) the class action waiver here does not impermissibly act as an exculpatory clause because it does not prohibit plaintiffs from individually vindicating their statutory rights under the CFA.  On balance, the waiver is not unconscionable and the lease is therefore enforceable.  (pp. 30-34)

**REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion. JUSTICE FASCIALE did not participate.**

3

William Pace and Robert
Walters, on behalf of themselves
and others, similarly situated,

Plaintiffs-Respondents,

v.

Hamilton Cove, Hamilton
Cove Apartments,
Hamilton Cove UR Holdco,
LLC, Greystar, Greystar
Management Services,
L.P., Greystar Real Estate
Partners, LLC, Greystar
RS HM, LLC, Greystar RS NE,
LLC, Hartz Mountain
Industries of New Jersey,
Inc., and Hartz Mountain
Industries-NJ LLC,

Defendants-Appellants.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
475 N.J. Super. 568 (App. Div. 2023).

| Argued | Decided |
|---|---|
| January 16, 2024 | July 10, 2024 |

Christopher A. Rojao argued the cause for appellants
(McCarter & English, attorneys; Christopher A. Rojao

1

and Ryan A. Richman, of counsel and on the briefs, and Ryan M. Savercool, on the briefs).

Miriam S. Edelstein argued the cause for respondents (Costello & Mains, attorneys; Deborah L. Mains, of counsel, and Miriam S. Edelstein and Lauren N. Bess, of counsel and on the briefs).

Jeffrey S. Jacobson argued the cause for amicus curiae New Jersey Civil Justice Institute (Faegre Drinker Biddle & Reath, and New Jersey Civil Justice Institute, attorneys; Jeffrey S. Jacobson, Jennifer G. Chawla, and Alex R. Daniel, on the brief).

Stephen P. DeNittis argued the cause for amicus curiae New Jersey Association for Justice (DeNittis Osefchen Prince, attorneys; Stephen P. DeNittis and Joseph A. Osefchen, on the brief).

Ryan A. Notarangelo submitted a brief on behalf of amicus curiae New Jersey Defense Association (Dughi, Hewit & Domalewski, attorneys; Ryan A. Notarangelo, of counsel and on the brief).

Esther Berezofsky submitted a brief on behalf of amici curiae Public Justice, National Association of Consumer Advocates, and National Consumer Law Center (Motley Rice New Jersey, and Public Justice, attorneys; Esther Berezofsky, Sarah Ortlip-Sommers (Public Justice) of the District of Columbia bar, admitted pro hac vice, and Leah Nicholls (Public Justice) of the District of Columbia bar, admitted pro hac vice, on the brief).

Sean J. Kirby submitted a brief on behalf of amicus curiae National Apartment Association (Sheppard, Mullin, Richter & Hampton, attorneys; Sean J. Kirby and Mark G. Rackers of the California bar, admitted pro hac vice, on the brief).

Dawn K. Miller submitted a brief on behalf of amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; Dawn K. Miller and David McMillin, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this appeal, we consider whether the class action waiver in the lease agreements between plaintiffs William Pace and Robert Walters and defendants Hamilton Cove Apartments[1] is enforceable. In so doing, we consider both (1) the specific class action waiver at issue here and (2) the Appellate Division's determination that class action waivers in consumer contracts that do not contain mandatory arbitration provisions are contrary to public policy and are therefore unenforceable.

Plaintiffs sued defendants under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, when they discovered that the Hamilton Cove apartment complex did not have around-the-clock security, contrary to defendants' alleged representations.

---

[1] The named defendants in this matter are Hamilton Cove; Hamilton Cove Apartments; Hamilton Cove UR Holdco, LLC; Greystar; Greystar Management Services, L.P.; Greystar Real Estate Partners, LLC; Greystar RS HM, LLC; Greystar RS NE, LLC; Hartz Mountain Industries of New Jersey, Inc.; and Hartz Mountain Industries-NJ LLC. We collectively refer to all defendants as Hamilton Cove or Hamilton Cove Apartments.

3

In filing suit, plaintiffs sought to certify a class of similarly situated tenants. Defendants moved to dismiss plaintiffs' claims for failure to state a claim and/or to strike plaintiffs' class allegations. The trial court denied defendants' motion. The Appellate Division affirmed, holding that "a class action waiver in a contract that does not contain a mandatory arbitration provision" is unenforceable as a matter of law and public policy. Pace v. Hamilton Cove, 475 N.J. Super. 568, 579-80 (App. Div. 2023).

For the reasons that follow, we reverse the judgment of the Appellate Division. Class action waivers in consumer contracts are not per se contrary to public policy, but they may be unenforceable if found to be unconscionable or to violate other tenets of state contract law. In this case, because plaintiffs clearly and unambiguously waived their right to maintain a class action and the lease contract is not unconscionable as a matter of law, we hold that it is enforceable.

I.

A.

We recount the following facts from the pretrial record but do not make any factual findings.

The Hamilton Cove apartment complex, located in Weehawken, is comprised of three separate buildings housing hundreds of apartments along

4

the Hudson River waterfront.  Plaintiffs allege that in April 2020, Hamilton Cove advertised on its website and social media pages that its apartments had "elevated, 24/7 security."  That same month, Pace toured Hamilton Cove's facilities.  At the time plaintiffs leased their apartments, Hamilton Cove had yet to complete construction.  Pace claims that, while on the tour, Hamilton Cove's leasing officer told him that security personnel would be stationed 24 hours a day, 7 days a week at a podium near the building's entrance and pointed out where they would be stationed.

On June 3, 2020, Pace executed his lease agreement, renting a Hamilton Cove apartment unit for a monthly rent of $3,650.  According to the lease, Pace received 3 months of his 26-month lease for free and was not required to pay an amenity fee until the amenities were open to residents.  On December 7, 2020, Walters entered into a similar lease agreement.  Walters agreed to pay a monthly rent of $3,740 and received 6 months of free rent on his 26-month lease, as well as 6 months of free parking.  Both plaintiffs' leases allowed prospective tenants three days to consult with an attorney, after which the leases would become final.

The leases, which were both standard form contracts, included multiple addenda.  One such addendum was the "Community Policies/Master Lease Addendum," which lists a "swimming pool," "spa or hot tub," "BBQ Grill/Fire

5

Pit," "Roof Top Deck," "Game Room/Theater," "Tanning Facilities," and "Dog Park/Spa," as some of the potential amenities that defendants would offer its residents.

The leases also contained a "Class Action Waiver" Addendum, which read as follows:

> **3. CLASS ACTION WAIVER.** You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and you may not be a class action plaintiff, class representative, or member in any purported class action lawsuit ("Class Action"). Accordingly, **you expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**
>
> **Any claim that all or any part of this Class Action waiver provision is unenforceable, unconscionable, void, or voidable shall be determined solely by a court of competent jurisdiction.**
>
> **YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION LAWSUIT. BY SIGNING THIS AGREEMENT, YOU UNDERSTAND AND CHOOSE TO WAIVE SUCH ABILITY AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THIS CLASS ACTION WAIVER SHALL SURVIVE**

6

**THE TERMINATION OR EXPIRATION OF THIS LEASE CONTRACT.**

The lease addenda were incorporated into and made part of the lease.

After moving into their apartments, Pace and Walters discovered that the complex's security cameras did not work and that there was no 24/7 security. Plaintiffs allege that as of June 2020, Building A's front desk greeter only worked from 11 a.m. to 5 p.m. on weekdays and "light hours" on the weekends. Even when the front desk greeter was present, the greeter was not always seated at the desk because the job required greeters to occasionally leave that post. Throughout 2021 and 2022, Hamilton Cove extended the front desk greeter's hours, but coverage was still not 24 hours a day, 7 days per week.

According to plaintiffs, the advertised "24/7 security" drew them to lease defendants' apartments and pay the leasehold price, especially because, plaintiffs allege, Weehawken has a property crime rate "approximately one-third higher" than the state average.

B.

On March 31, 2022, Pace and Walters jointly filed a complaint, alleging common law fraud and a violation of the CFA. Plaintiffs sought compensatory, punitive, and treble damages, as well as attorneys' fees and equitable relief. Plaintiffs alleged that defendants engaged in "an

7

unconscionable commercial practice" by knowingly making false representations regarding the 24/7 security on their premises. In their complaint, plaintiffs also sought to certify a class comprised of similarly situated tenants.

Defendants moved to dismiss plaintiffs' claims for failure to state a claim or, alternatively, to strike plaintiffs' class allegations, arguing that plaintiffs waived their ability to proceed as a class when they signed the class action waiver addendum to the lease. Plaintiffs opposed the motion, arguing that the lease agreements were unconscionable and contracts of adhesion.

The trial court denied defendants' motions, finding plaintiffs' complaint sufficiently pled fraud in accordance with Rule 4:5-8(a). Although the trial court did not specifically hold that the lease was a contract of adhesion, it noted plaintiffs' assertion that, as "potential tenants negotiating with a sophisticated business, they lacked bargaining power" and determined that plaintiffs "met the bar to survive the motion to dismiss." Lastly, the court concluded that "the fundament of a class action" could be gleaned from plaintiffs' complaint.

Defendants filed a motion for leave to appeal, which the Appellate Division granted. The Appellate Division affirmed the trial court's decision and held that "a class action waiver in a contract that does not contain a

8

mandatory arbitration provision" is unenforceable as a matter of law and public policy.  Hamilton Cove, 475 N.J. Super. at 579-80.

The Appellate Division began its analysis by noting that class action requirements are liberally construed because, for certain cases, class actions are the favored method of adjudicating claims, but that the right to bring a class action could be waived in arbitration agreements.  Id. at 575-76.  The court then discussed AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).  See id. at 576-77.  The Appellate Division cited Concepcion for the principle that "the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, preempts states from invalidating class action waiver clauses contained within arbitration agreements on public policy or unconscionability grounds," and it noted that "[t]he majority in Concepcion specifically found that several aspects of class-based dispute resolution . . . were incompatible with the basic characteristics of arbitration."  Ibid. (discussing 563 U.S. at 341-42, 348-51).  The court then reasoned that, because no arbitration agreement was present in the lease agreements at issue, "the policies favoring arbitration and encouraging enforcement of arbitration agreements . . . do not apply and what the Supreme Court of the United States has said about class action waivers [in Concepcion] is irrelevant."  Id. at 577.

9

The Appellate Division then determined that unless they are rendered enforceable by the presence of an arbitration agreement, "[c]lass action waivers are clearly contrary to the public policy of this State." Id. at 578-79. The Appellate Division rejected defendants' argument that the lease agreements were not contracts of adhesion and that the class action waivers were not unconscionable because of the inclusion of the three-day attorney review period. Id. at 577-78. The appellate court further explained that its holding did not focus "solely on plaintiffs' ability to individually vindicate their common law rights" to obtain relief, but instead looked more broadly "'into how the identified restrictions affect our State's public policy of protecting' consumers." Id. at 578 (quoting Est. of Ruszala ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 299 (App. Div. 2010)). Stressing that "[t]he freedom to contract is limited," the court concluded that class action waivers fall into the category of contractual provisions "that dismantle or disable important procedures and due process rights provided in our Part IV rules" and should not be enforced when unaffected by case law interpreting the FAA. Id. at 578-79.

The Appellate Division specifically noted that its conclusion that the class action waiver was unenforceable did not depend on whether the waiver was unconscionable or part of an adhesion contract. Id. at 579 n.2. Its

10

holding, the court explained, instead turned on the fact that a class action waiver is contrary to public policy. Ibid. The court also found that a class action is "clearly favored" in this case, assuming the facts plaintiffs allege are true. Id. at 575-77. The court reasoned that class action litigation would avoid inconsistent results and enhance judicial economy and economic efficiency, given that hundreds of Hamilton Cove's tenants would be similarly affected by the lack of promised 24/7 security. Id. at 577.

We granted defendants' motion for leave to appeal, 255 N.J. 342 (2023), and we stayed the case pending appeal. We also granted the applications of the National Apartment Association (NAA); the New Jersey Civil Justice Institute (NJCJI); the New Jersey Defense Association (NJDA); the New Jersey Association for Justice (NJAJ); Legal Services of New Jersey (LSNJ); and joint amici Public Justice, the National Association of Consumer Advocates, and the National Consumer Law Center (collectively, Public Justice), to participate as amici curiae.

II.

A.

Defendants urge us to reverse the Appellate Division's bright-line rule invalidating all class action waivers in New Jersey except those coupled with an arbitration agreement. Defendants contend that the Appellate Division's

bright-line rule is inconsistent with case law permitting parties to contractually waive other rights, such as the right to a jury trial, without any arbitration requirement. Moreover, defendants maintain that plaintiffs clearly and unambiguously waived their right to bring a class action because the class action waiver sufficiently put plaintiffs on notice that they were waiving their right to participate in a class action and would have to litigate their claims on an individual basis.

Defendants assert that the leases at issue are not unconscionable contracts of adhesion. Defendants maintain, however, that even if we find the leases are contracts of adhesion, they are still enforceable because they do not run afoul of the factors in Rudbart v. North Jersey District Water Supply Commission, 127 N.J. 344 (1992). Defendants argue that plaintiffs have an incentive to bring individual claims because of the possibility of recuperating treble damages and attorneys' fees under the CFA and point out that another tenant has already done so.

Several amici support defendants' arguments and posit that the Appellate Division's decision will have negative effects. NAA claims the Appellate Division's bright-line rule will harm apartment owners and managers who rely on standard forms; will result in higher rents and costs to tenants; and will "further weaken an industry that is already on its heels" due to increased labor,

cleaning and maintenance costs, insurance premiums, and "historically high interest rates." NJCJI contends that the Appellate Division's decision makes New Jersey an outlier among states that have considered the issue; creates a conflict between this case and Cerciello v. Salerno Duane, Inc., 473 N.J. Super. 249 (App. Div. 2022); and erroneously applies Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1 (2006), which it submits Concepcion overruled. NJDA asks this Court to maintain a case-by-case approach when assessing the enforceability of a contractual provision and argues such an approach best considers public policy interests and the freedom to contract.

B.

Plaintiffs argue that the Appellate Division's decision comports with well-established principles of New Jersey law, public policy, and precedent. Plaintiffs contend that the class action waiver at issue is unenforceable and characterize the cases cited by defendants as inapplicable because those cases analyzed class action waivers only in the arbitration context. According to plaintiffs, not only are the lease agreements contracts of adhesion, but they are also unconscionable under Rudbart and Muhammad.

LSNJ submits that class action waivers are contrary to this State's strong public policies of ensuring access to justice, deterring illegal conduct, and

13

enhancing judicial efficiency. LSNJ urges this Court to adopt a presumption against enforceability if we reject the Appellate Division's rule and adds that businesses should bear the burden of establishing that their waiver provisions are fair and consistent with public policy, rather than merely exculpatory.

NJAJ argues that the class action waiver at issue enables defendants to contractually opt out of Rule 4:32, which in turn violates New Jersey's public policy of promoting the uniform application of the New Jersey Court Rules. NJAJ asserts that when freedom of contract and other New Jersey public policy goals are at odds, public policy must prevail.

Public Justice highlights the various benefits of class actions, emphasizing that they promote consumer justice by enabling recovery for corporate misconduct that would otherwise go unchecked and can lead to changes in companies' behavior. One such benefit includes deterring companies from engaging in harmful practices due to the threat of litigation. Public Justice submits that the Appellate Division's bright-line rule is consistent with other state court decisions holding that bans on class actions in all types of contracts may be unconscionable under state law.

III.

A.

We review defendants' Rule 4:6-2(e) motion to dismiss for failure to state a claim, or alternatively, to strike plaintiffs' class action allegations, de novo, affording no deference to the trial court's determination. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). In doing so, we must examine "the legal sufficiency of the facts alleged on the face of the complaint." Robey v. SPARC Grp. LLC, 256 N.J. 541, 553-54 (2024) (quoting Baskin, 246 N.J. at 171). The plaintiff is entitled to the benefit of every reasonable inference as we "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Nevertheless, "if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos v. Borrus, Goldin, Foley, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019).

On appeal, we also review contracts and their enforceability de novo. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019).

Whether a class action waiver provision is enforceable "is a question of law, and we need not defer to the interpretative analysis of the trial or appellate courts unless we find it persuasive." See ibid.

We begin our review by considering whether, as the Appellate Division held, class action waivers are unenforceable when no arbitration agreement is present.

B.

1.

A class action "is a procedural device that permits one or more members of the class to sue or be sued as representative parties on behalf of all members." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:32-1 (2024). Rules 4:32-1 and -2 govern class actions. To obtain class status, the party seeking class certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a)(1) to (4).]

16

In addition, Rule 4:32-1(b) states that a class action may be certified if

(1) the prosecution of separate actions by or against individual members of the class would create a risk either of:

(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

"When class certification is granted, a representative with typical claims is authorized 'to sue on behalf of, and stand in judgment for, a group of similarly-situated litigants.'" Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 518 (2010) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007)).

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Such an action is the procedural mechanism by which "'an otherwise vulnerable class' of diverse individuals with small claims" is given "access to the courthouse." Lee, 203 N.J. at 518 (quoting Iliadis, 191 N.J. at 120). Class actions also further other policy goals, such as "judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Iliadis, 191 N.J. at 104. For this reason, New Jersey courts have consistently held that Rule 4:32-1 should be liberally construed. Lee, 203 N.J. at 518; Iliadis, 191 N.J. at 103.

18

## 2.

Citing the policy considerations that favor class actions and the liberal construction of class action requirements, the Appellate Division in this case established a bright-line rule that "a waiver of the right to maintain a class action is unenforceable absent a mandatory arbitration agreement." Hamilton Cove, 475 N.J. Super. at 571. If that proposition were accurate, the specific waiver at issue here could be struck down without any particularized analysis of its viability. We disagree with that proposition for the following reasons.

Class action waivers are distinct from arbitration provisions even though, as case law reflects, such waivers are frequently paired with arbitration provisions to prevent class arbitration. Simply because courts have considered and upheld class waivers accompanied by arbitration agreements in light of the arbitration-protective policies adopted in the FAA and state arbitration acts, however, does not mean that an arbitration provision is necessary to a class waiver's enforceability. Although Concepcion turns on the FAA's preemption of a state rule that would "condition[] the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures," see 563 U.S. at 336, 352, the decision nowhere suggests that class waivers cannot be enforced outside the arbitration context.

Nor does the fact that class actions advance several important policy goals mean that they cannot be waived. Our law supports the contractual waiver of many rights that advance important goals, such as the constitutional right to a jury trial, provided that the requisite procedural safeguards surrounding the waiver are met. See, e.g., LaManna v. Proformance Ins. Co., 184 N.J. 214, 223 (2005) ("Constitutional rights generally may be waived."); Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 149 (1998) (recognizing that "[p]arties invoking arbitration to settle a dispute" waive "some" constitutional rights, such as the right to trial by jury and their right to appeal); Sexton v. Newark Dist. Tel. Co., 84 N.J.L. 85, 101 (Sup. Ct. 1913), aff'd 86 N.J.L. 701 (E. & A. 1914) ("The practice of waiving a trial by jury in civil cases or proceedings in this state is of such common occurrence as to attract no attention, and it has never been doubted in this state that such a waiver could be made."). As we recently observed, "[o]ur case law underscores New Jersey's strong public policy in favor of the freedom to contract," a policy limited only "in those circumstances where a contract would otherwise violate public policy." Boyle v. Huff, ___ N.J. ___, ___ (2024) (slip op. at 19).

Legislatures can override the freedom to contract in specific settings. Indeed, to support the proposition that "[c]lass action waivers have been

20

declared unenforceable outside of the arbitration context in some

jurisdictions," the Appellate Division cites two cases applying the Fair Labor

Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 to 219, in which Congress

specifically provided that the statute could be enforced through a class action.[2]

See Hamilton Cove, 475 N.J. Super. at 578 n.1; 29 U.S.C. § 216(b) ("An

action to recover the liability prescribed in the preceding sentences may be

maintained against any employer . . . by any one or more employees for and in

behalf of himself or themselves and other employees similarly situated."); see

also Killion v. KeHE Distribs., LLC, 761 F.3d 574, 592 (6th Cir. 2014)

("Because no arbitration agreement is present in the case before us, we find no

countervailing federal policy that outweighs the policy articulated in the

---

[2]  The Appellate Division also included a cf. citation to a New Mexico case, Fiser v. Dell Computer Corp., 188 P.3d 1215 (N.M. 2008), to support its contention that class action waivers without an arbitration provision have been found unenforceable in other jurisdictions. Hamilton Cove, 475 N.J. Super. at 578 n.1. As explained in Fiser, however, New Mexico had also enacted specific statutory provisions that prohibited class action waivers in the arbitration context. 188 P.3d at 1219. The Supreme Court of New Mexico in that case noted that "the New Mexico Uniform Arbitration Act declares that arbitration clauses that require consumers to decline participation in class actions are unenforceable and voidable," citing N.M. Stat. Ann. §§ 44-7A-1(b)(4)(f) and 44-7A-5. Ibid. The court further acknowledged that although those provisions might "be preempted by the FAA, it is clear evidence of the fundamental New Mexico policy of allowing consumers a means to redress their injuries via the class action device." Ibid. (citation omitted). We have no such statutory provisions in New Jersey.

21

FLSA." (emphasis added)); Hall v. U.S. Cargo & Courier Serv., LLC, 299 F. Supp. 3d 888, 893 (S.D. Ohio 2018) (applying Killion and explaining that, in Killion, "[t]he Sixth Circuit held that employees cannot waive their rights under the FLSA, including their right to join collective actions, where no arbitration agreement exists" (emphasis added)).

The Appellate Division did not discuss the role the text of the FLSA played in the decisions it cites. See Hamilton Cove, 475 N.J. Super. at 578 n.1. But the fact that certain legislation may expressly confer a right to file a class action, thereby forestalling attempts to contract around class actions, strongly supports the premise that class action waivers can be enforceable and not the proposition that they are always unenforceable outside the arbitration context.

The Eleventh Circuit, for example, recently affirmed a district court decision that struck down a class action waiver outside the arbitration context because the waiver contravened "the Georgia Legislature's intent to preserve class actions as a remedy for those aggrieved by payday lenders." Davis v. Oasis Legal Fin. Operating Co., 936 F.3d 1174, 1183 (11th Cir. 2019). The statutes at issue in Davis expressly permitted plaintiffs to proceed through class actions in certain circumstances. See id. at 1181 (quoting the statutes); see also Ga. Code Ann. § 16-17-3 ("A civil action under [Georgia's Payday

22

Lending Act] may be brought on behalf of an individual borrower or on behalf of an ascertainable class of borrowers. In a successful action to enforce the provisions of this chapter, a court shall award a borrower, or class of borrowers, costs including reasonable attorneys' fees."); Ga. Code Ann. § 7-3-50(g) ("A claim of violation of [Georgia's Installment Loan Act] against a licensee may be asserted in an individual action only and may not be the subject of a class action under [Ga. Code Ann. §] 9-11-23 or any other provision of law. A claim of violation of this chapter against an unlicensed lender may be asserted in a class action under [Ga. Code Ann. §] 9-11-23 or any other provision of law.").

The Eleventh Circuit pointedly distinguished cases like the one before it, in which a class action waiver would violate "Georgia's public policy as expressed in the text and purpose of" applicable statutes, from those in which the court had previously held that "certain class action waivers were not unconscionable." Davis, 936 F.3d at 1183. Here, there is neither a controlling statutory provision that expressly permits class actions, see N.J.S.A. 56:8-19 (creating a cause of action for aggrieved individuals under the CFA without mentioning a right to proceed by class action), nor a clear statement of public policy disfavoring class action waivers. This case would thus fall under the latter group of cases identified by the Eleventh Circuit, in which class action

23

waivers were evaluated through the lens of unconscionability and traditional tenets of contract formation.

Guided by those legal principles, we hold that class action waivers standing alone and apart from a mandatory arbitration provision are not per se unenforceable. Instead, a particular class action waiver in a given contract may be unenforceable if found to be unconscionable or invalid under general contract principles. As a matter of general contract law, the inquiry is the same regardless of whether a contract contains an arbitration provision. See, e.g., Cerciello, 473 N.J. Super. at 260 (holding that an otherwise valid class action waiver accompanied by an arbitration agreement was not rendered invalid by the court's determination that the arbitration agreement was unenforceable).

We therefore next consider whether the class action waiver in the lease agreement here was unconscionable.

## C.

### 1.

"The common law would invalidate a contract as not being knowing or voluntary if it were secured through fraud, duress, coercion, or mistake." Howlett v. Holiday Inns, Inc., 120 F.3d 598, 601 (6th Cir. 1997). Courts likewise refuse to enforce contracts that are unconscionable. Muhammad, 189

N.J. at 15 (quoting Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc., 273 N.J. Super. 231, 236 (App. Div. 1994)). When a party asserts unconscionability as a defense, we conduct a fact-sensitive analysis and assess both procedural and substantive unconscionability. Id. at 15-16; Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006).

This Court has recognized that a contract of adhesion -- a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars" -- necessarily involves some measure of procedural unconscionability. Rudbart, 127 N.J. at 353; Muhammad, 189 N.J. at 15; cf. Concepcion, 563 U.S. at 346-47 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Because of this, the observation that a contract is a contract of adhesion imbued with some procedural unconscionability marks only "the beginning, not the end of the inquiry" regarding its enforceability. Rudbart, 127 N.J. at 354; Muhammad, 189 N.J. at 15.

When determining whether to enforce a contract of adhesion as a matter of policy, our courts consider the following factors: (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the adhering party, and (4) the public

25

interests affected by the contract.  Rudbart, 127 N.J. at 356.  Those factors, known as the Rudbart factors, "focus on the procedural and substantive aspects of a contract of adhesion in order to determine whether the contract is so oppressive or inconsistent with the vindication of public policy that it would be unconscionable to permit its enforcement."  Delta Funding, 189 N.J. at 40 (citations omitted).

Rudbart, Muhammad, and Delta Funding -- all decided prior to the Supreme Court's decision in Concepcion -- each offer a window into the unconscionability analysis in practice.  We briefly discuss each case in turn.

In Rudbart, the North Jersey District Water Supply Commission (Commission) issued project notes to finance the construction of a new water supply facility.  127 N.J. at 348.  After choosing to redeem the notes early, the Commission called upon First Fidelity Bank, N.A., the designated indenture trustee, to issue notice of the early redemption via newspaper.  Id. at 348-49.  Late-redeeming noteholders who did not receive notice instituted a class action alleging that "notice by publication, although specifically provided for in the notes, was inadequate and unconscionable."  Id. at 348.

The Rudbart Court refused to invalidate the notice-by-publication term on public policy grounds, despite finding that the project notes were contracts of adhesion.  Id. at 361.  The Court found that "the principal justifications for

26

invalidating terms of a contract of adhesion [were] simply not present in a fully open and competitive securities market." Id. at 356. Investors did not face a monopolistic market; rather, they had the ability to choose from "a vast selection of alternative equity and debt investments, including bonds and notes with various call and notice provisions." Ibid. Additionally, "[t]he notes were not consumer necessities." Ibid. As such, the Court concluded that investors were not under economic pressure to purchase the Commission's publicly traded securities. Ibid.

In Muhammad, the Court held that the class arbitration waivers contained in a consumer payday loan were unconscionable under the Rudbart factors. 189 N.J. at 18-22, 26. In that case, the plaintiff entered into a contract for a $200 loan subject to an annual percentage rate of 608.33 percent. Id. at 7. The plaintiff was unable to repay the loan, which resulted in additional finance charges. Ibid. The loan agreement in Muhammad contained two types of class action waivers: class arbitration waivers which barred class claims in arbitration, and broad class action waivers which barred participation in a class action brought either in arbitration or in court. Id. at 9-10.

The plaintiff sought to bring a putative class action alleging defendants violated the CFA, among other allegations. Id. at 10. Under Rudbart's fourth factor, the Court considered whether the class arbitration waivers functionally

27

prevented the plaintiff from pursuing her rights under the CFA and thus shielded defendants from complying with the law. Id. at 19. The Court recognized that class action waivers could effectively act as exculpatory clauses if they rendered enforcement of consumer rights "difficult if not impossible" by limiting the amount of recoverable damages and "reducing the possibility of attracting competent counsel to advance" consumer fraud lawsuits, thereby discouraging aggrieved parties from bringing suit. Id. at 19-21. The Court found that to be the case in Muhammad. Id. at 21.

First, the plaintiff's compensatory claims were for $180, which once trebled under the CFA would be "a maximum of less than $600." Ibid. Also, given the small potential recovery, the Court determined that "[o]ne may be hard-pressed to find an attorney willing to work" on such a matter. Ibid. Accordingly, the Court determined that the public interest in the plaintiff's and her fellow consumers' statutory rights under the CFA overrode the defendants' right to enforce the class arbitration bars. Id. at 21-22. After severing the class arbitration waivers, the Court concluded that the remainder of the arbitration agreement was enforceable. Id. at 26.

Lastly, in Delta Funding, we considered whether a class arbitration waiver in a consumer loan agreement was unenforceable on unconscionability grounds. 189 N.J. at 35, 47. Plaintiff Delta Funding Corporation (Delta)

28

entered into a $37,700 mortgage loan contract with defendant Alberta Harris, who was seventy-eight years old and possessed a sixth-grade education and little financial expertise. Id. at 35. The loan was secured by a mortgage on Harris's home, which she had owned and lived in for over thirty years. Id. at 35-36. The loan also contained a class arbitration waiver stating that "[t]here shall be no right or authority for any Claims to be arbitrated on a class action or class-wide basis." Id. at 36 (alteration in original).

Despite finding that this consumer loan agreement was a contract of adhesion, this Court upheld the class arbitration waiver. Id. at 47. We rejected Harris's claim that the provision was unconscionable, finding her case distinguishable from Muhammad. Ibid. The Court concluded that "Harris's claim [was] not the type of low-value suit that would not be litigated absent the availability of a class proceeding." Ibid. Harris was seeking a "substantial" sum in damages -- $100,000 -- and it was unclear whether that demand accounted for statutory multipliers. Ibid. We found that Harris had an adequate incentive to bring her claim as an individual action because her home was at stake, making it more likely that she would secure an attorney. Ibid. The substantial damages and statutory remedies available to Harris "render[ed] the class-arbitration waiver enforceable." Ibid.

Although Muhammad and Delta Funding assessed alleged unconscionability in class arbitration waivers, the analytical framework they present is equally applicable to the question of whether a class action waiver is unenforceable.[3]

2.

In this case, plaintiffs knowingly and voluntarily waived their right to maintain a class action. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 443 (2014) (explaining that valid contractual waiver provisions are "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right"). The agreement here was "written in a simple, clear, understandable and easily readable way" as required by the CFA, N.J.S.A. 56:12-2, and it clearly and unambiguously put plaintiffs on notice that they could only proceed with a lawsuit against defendants on an individual basis, see Atalese, 219 N.J. at 444, 447.

Although the lease agreement plaintiffs signed arguably is a contract of adhesion because it was generally presented in a "take-it-or-leave-it" manner,

[3] Moreover, it is of no moment that Rudbart preceded Concepcion. The FAA's saving clause empowers courts to apply state contract law when considering whether to uphold or strike down arbitration provisions as long as they apply "grounds [that] exist at law or in equity for the revocation of any contact," not only an arbitration agreement. Concepcion, 563 U.S. at 339-40; 9 U.S.C. § 2.

30

that marks "the beginning, not the end of the inquiry" regarding its enforceability.  Rudbart, 127 N.J. at 354; Muhammad, 189 N.J. at 15.  Thus, we must consider whether the class action waiver contained in the lease agreements is enforceable as a matter of public policy under the Rudbart factors.

First, the subject matter of the agreement is a consumer contract for housing subject to the CFA.  See Heyert v. Taddese, 431 N.J. Super. 388, 413 (App. Div. 2013) ("It is well-established that the broad scope of the CFA encompasses transactions between residential tenants and their landlords.").

Factor two, the parties' relative bargaining power, does not particularly favor plaintiffs or defendants.  The landlord here is certainly in a superior bargaining position given the standard-form lease agreement presented.  Although both plaintiffs obtained some apparently negotiated benefits in their leases like free rent for a period of time, the lease was in essence a take-it-or-leave-it contract.  But the circumstances surrounding the apartments' rental are different from those in Muhammad and Delta Funding.  For example, in Muhammad, the gross disparity in bargaining power was "self-evident" given that the bank was preying on consumers' needs by offering small sum payday loans with an annual percentage rate of 608.33 percent.  189 N.J. at 7, 18-19.  In Delta Funding, the mortgage loan contract was between a New York

31

mortgage lender and a seventy-eight-year-old woman with a sixth-grade education and little financial expertise. 189 N.J. at 35-36. Here, defendants generally presented the lease on a take-it-or-leave-it basis, but plaintiffs had time to consult with an attorney and were free to seek out alternative housing arrangements if they did not agree with the lease's terms. That setting stands in stark contrast to a situation in which a consumer is in such financial straits that they seek out a $200 loan subject to an annual percentage rate of over 600 percent, which was the scenario in Muhammad in which we held the class waivers were unconscionable.

Regarding Rudbart's third factor, this case is readily distinguishable from Muhammad. Unlike the plaintiff in Muhammad, who alleged that she was under a "high degree of economic compulsion," 189 N.J. at 19 n.4, plaintiffs' complaint contains no such allegations. We do not suggest that a complaining party must be under dire circumstances to make a successful showing under factor three, but the record must contain some indicia of economic compulsion. Similar to the situation in Rudbart,[4] plaintiffs here did not face "a monopolistic market," and likely had the ability to choose from "a

---

[4] We recognize that Rudbart involved "unique policy considerations attendant on securities offerings." 127 N.J. at 361. However, we find persuasive the Court's holding that the project notes were enforceable, "although the project notes fit [the] literal definition of contracts of adhesion." Ibid.

vast selection" of apartments available for a monthly rent comparable to the $3,700 rent at issue here.  See 127 N.J. at 356.  Plaintiffs argue that New Jersey's "chronic housing shortage" is sufficient to establish economic compulsion, but they have put forth no arguments specific to the facts of this case that Hamilton Cove was the only apartment complex available to plaintiffs, or that plaintiffs had no choice but to lease the apartments.

Under Rudbart's fourth factor, we must determine whether the class action waiver operates as an exculpatory clause, such that it prevents plaintiffs from pursuing their statutory consumer protection rights and shields defendants from compliance with the law.  See Muhammad, 189 N.J. at 19.  Class actions are particularly valuable because they incentivize consumers who may only have small figure claims to vindicate their rights.  Id. at 17; Lee, 203 N.J. at 517-18.  Plaintiffs would have us believe they were faced with only two options:  bringing a class action or not instituting an action at all.  Yet nothing in the record supports that dilemma.  To the contrary, plaintiffs acknowledged in their complaint that another tenant has brought an individual suit against defendants.  The class action waiver here does not prohibit plaintiffs, and similarly situated tenants of Hamilton Cove, from individually vindicating their statutory rights under the CFA, which allows for treble damages and recovery of attorneys' fees for successful claims.  Because the class action

33

waiver at issue does not functionally operate as an exculpatory clause, we hold that, on balance, the waiver is not unconscionable.

In sum, because plaintiffs knowingly and voluntarily waived their right to bring a class action by assenting to their respective leases and the class action waiver contained therein is not unconscionable, the lease is enforceable.

## IV.

We reverse the Appellate Division's judgment and remand the matter for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, WAINER APTER, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion. JUSTICE FASCIALE did not participate.